THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| E.I. DU PONT DE NEMOURS AND COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CARDINAL HEALTH, INC.,<br>CARDINAL HEALTH 200, INC.,<br>BBA GROUP U.S. HOLDINGS, INC. and<br>BBA NONWOVENS SIMPSONVILLE, INC.,<br><br>Defendants. | Misc. Business<br>Docket No. 04MBD 10106<br><br>(Related Case Pending in the<br>Middle District of Tennessee<br>Case No. 3-03-0848) |

## MEMORANDUM IN SUPPORT OF MOTION FOR
## PROTECTIVE ORDER AND TO MODIFY SUBPOENA

TIAX, LLC ("TIAX") and E.I. DuPont de Nemours and Company ("DuPont") respectfully submit this Memorandum in support of their Motion For Protective Order modifying a subpoena ("Subpoena") served under this Court's authority upon TIAX by Cardinal Health 200, Inc. ("Cardinal").

The Subpoena, stemming from a lawsuit pending in Tennessee federal court, seeks information from TIAX regarding technical analysis it has performed regarding fabrics used in the surgical operating room. TIAX was retained by a law firm, Crowell & Moring LLP ("C&M"), to assist C&M in the giving of legal advice to DuPont concerning regulatory and product safety issues related to DuPont fabrics as found in the surgical operating environment.

TIAX, which is not a party to the Tennessee lawsuit, has produced volumes of information to Cardinal in response to the Subpoena, including its final report, its executive

summary of that report, and data underlying the report. It has also agreed to produce a witness or witnesses in response to the Subpoena. It has not agreed, however, to turn over certain of its internal draft work product, including preliminary draft information generated to assist C&M in its giving of legal advice. This information is protected from discovery by the attorney-client privilege. Cardinal asserts otherwise, and has demanded that this information be turned over.

TIAX and DuPont thus seek this Court's protection.

## FACTS

### A.  TIAX

1. TIAX, LLC ("TIAX") is a scientific research and development consulting firm headquartered in Cambridge, Massachusetts. TIAX was formed in May 2002 out of the technology and innovation business of the former Arthur D. Little consulting firm. TIAX provides research, product development, and technology transfer services for clients. TIAX has expertise in fabric technology and standards that apply to protective clothing.

2. Crowell & Moring, LLP ("C&M") is a law firm based principally in Washington, D.C.

3. E.I. DuPont de Nemours & Company ("DuPont") is a corporation based in Wilmington, Delaware. DuPont manufactures materials which are used, *inter alia*, in the manufacture of surgical gowns widely used in hospital operating rooms across the country.

4. In or about July 2003, pursuant to their existing and ongoing attorney-client relationship, DuPont retained C&M to provide legal advice regarding product safety and regulatory issues involving surgical gowns and drapes.

5. In or about August 2002, attorneys at C&M retained TIAX to assist it in providing the legal advice requested of C&M by DuPont.

2

6.  From its retention to December 2003, TIAX performed research and analysis on surgical drapes and gowns at the request of and under the direction of C&M.

7.  On December 4, 2003, TIAX issued a report ("Report") describing the methods used and the data obtained in its scientific research on surgical gowns and drapes. TIAX provided the Report to C&M, which in turn provided it to DuPont. Upon information and belief, DuPont has since shared the Report with others.

**B.  The Subpoena At Issue**

8.  On or about February 11, 2004, TIAX was served with a subpoena for a Rule 30(b)(6) videotaped oral deposition and for the production of documents in connection with a civil action captioned *E.I. Du Pont de Nemours and Company v. Cardinal Health, Inc. et al.*, No. 3-03 0848 (M.D. Tenn). This Subpoena was issued at the request of Cardinal. A copy of the Subpoena is attached as Tab A.

9.  TIAX is not a party to this Tennessee action. TIAX has not been identified as a consulting expert, a testifying expert, or a witness by any party to that action.

10. TIAX is cooperating in good faith with the Subpoena. Pursuant to, and in reliance on, a confidentiality agreement with Cardinal dated March 5, 2004, TIAX has produced to Cardinal hundreds of pages of responsive documents. Included among these produced documents are (a) the Report; (b) data underlying the Report; and (c) TIAX internal working papers underlying the Report. In addition, TIAX has agreed to produce a witness or witnesses for a Rule 30(b)(6) deposition, and is cooperating with attorneys for the parties in the Tennessee action to schedule the deposition at a mutually agreeable time and location.

on Monday, April 5, 2004 at 12:00 p.m. Eastern Standard Time, and on Tuesday, April 6, 2004 at about 2 p.m. Eastern Standard Time. They were unable to reach an agreement that would resolve this dispute and avoid burdening the Court.[2]

## LEGAL STANDARDS

Under Rule 26(c) of the Federal Rule of Civil Procedure, district courts may issue a protective order to limit or eliminate the discovery sought. Fed. R. Civ. P. 26(c); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 192 (1st Cir. 2001). Upon a showing of good cause, a court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c). Additionally, Rule 45(c)(3)(A) empowers district courts to "quash or modify the subpoena if it . . . (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies . . . ." Fed. R. Civ. P. 45(c)(3)(A). *See also Ameristar*, 244 F.3d at 192.

In exercising their broad discretion, courts are particularly protective of non-parties threatened with invasive discovery. Where the "target of discovery" is such a non-party, the court may place greater limits and stricter boundaries on discovery than it would vis-à-vis a litigation party. *See Blount Int'l, Ltd. v. Schuylkill Energy Res. Inc.*, 124 F.R.D. 523, 526 (D. Mass. 1989).

---

[2] The parties are still discussing their respective positions regarding confidentiality. Movants will supplement these moving papers to advise the Court whether they seek relief as to confidentiality once this issue is ripe.

5

## ARGUMENT

## TIAX'S DRAFT INTERNAL MATERIALS ARE PROTECTED BY ATTORNEY-CLIENT PRIVILEGE

A.  **The Attorney-Client Privilege Protects The Internal Work Product of Consultants Retained By Attorneys To Facilitate The Giving Of Legal Advice**

The attorney-client privilege is the oldest of the common law privileges for confidential communications. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege encourages full and frank discussion by protecting these communications, and by so doing "better enabl[es] the client to conform his conduct to the dictates of the law and to present legitimate claims and defenses if litigation ensues." *XYZ Corp. v. United States (In re Keeper of the Records)*, 348 F.3d 16, 22 (1st Cir. 2003).

Communications made for the purpose of obtaining or giving legal advice are at the core of the attorney-client privilege. *See, e.g., id.; Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609, 633 (M.D. Pa. 1997). In this day and age, attorneys often cannot give legal advice related to technical and scientific issues without the aid of outside professional experts. "Because the practice of law has increasingly grown more complex, attorneys cannot function effectively without the help of others." *Ferko v. NASCAR*, 218 F.R.D. 125, 134 (E.D. Tex. 2003). In order to provide legal advice, then, attorneys frequently seek the aid of retained expert professionals.

The attorney-client privilege extends to the efforts of such expert professionals. Specifically, the non-public efforts of consulting experts retained by an attorney for the purpose of facilitating a legal communication with counsel, or to enable counsel to provide its client legal advice, is privileged when linked to the giving of legal advice. *See Cavallaro v. United States*, 153 F. Supp. 2d 52, 57-58 (D. Mass. 2001), *aff'd, Cavallaro v. United States*, 284 F.3d 236, 247

6

(1st Cir. 2002); *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961) (Friendly, J.). As the First Circuit has explained,

> [B]ecause 'the complexities of modern existence prevent attorneys from effectively handling clients' affairs without the help of others,' the attorney-client 'privilege must include all the persons who act as the attorney's agents.'

*Cavallaro v. United States*, 284 F.3d 236, 247 (1st Cir. 2002) (quoting Judge Friendly in *United States v. Kovel*, 296 F.2d 918, 921 (2d Cir. 1961)). In this setting, the outside consultant is considered the attorney's agent or extension, and its internal efforts on behalf of counsel enjoy no lesser attorney-client status than would the attorney's discussions with his or her client's employed personnel.

Like any privilege, this application of attorney-client privilege can be waived, such as by disclosing non-public consultant work to third parties. However, the mere exchange of information between the attorney and the consultant does not itself effectuate a waiver, since, as the authorities identified above establish, "[a]n exception to this rule exists for third parties who assist an attorney in rendering legal advice." *Ferko*, 218 F.R.D. at 134. *See also Cavallaro*, 284 F.3d at 247 (same).

Nor does disclosure of the **non-confidential** portions of a consultant's work product effect any waiver of privilege. Thus, when a consultant's final report is made public -- as it often is -- this does not mean that non-public iterations of that report and related internal information *ipso facto* lose their privileged status. *See, e.g., Schenet v. Anderson*, 678 F. Supp. 1280, 1284 (E.D. Mich. 1988) ("The [attorney-client] privilege is waived only as to those portions of the preliminary drafts ultimately revealed to third parties."); *see also XYZ Corp. (In re Keeper of the Records)*, 348 F.3d at 24 ("Accordingly, we hold, as a matter of first impression in this circuit, that the extrajudicial disclosure of attorney-client communications, not thereafter used by the

7

client to gain adversarial advantage in judicial proceedings, cannot work an implied waiver of all confidential communications on the same subject matter.").

### B. The Internal Draft TIAX Materials At Issue Are The Proper Subject Of Attorney-Client Privilege

As described above, TIAX has made a broad production of materials in response to the subpoena at issue. Among the materials provided, TIAX has already made available to Cardinal:

- its Report;
- an "executive Summary" of the Report;
- data underlying the Report;
- and non-privileged communications reflecting TIAX's scientific analysis.

TIAX has withheld from this production on grounds of privilege confidential drafts of the Report and associated correspondence with C&M related to the generation of TIAX's report. These drafts reflect the efforts of TIAX to facilitate the rendering of legal advice by C&M to DuPont on regulatory and product safety issues.

Applying the principles addressed above, courts commonly find internal draft materials to be shielded from disclosure by attorney-client privilege.

This was the issue presented in *Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609, 635 (M.D. Pa. 1997), where plaintiff Andritz and its predecessor entity retained a consultant to assist counsel "to advise it on environmental matters and oversee investigation and remediation" of two environmental sites. *Id.* at 631 n.13. Andritz made public, and produced in discovery, the consultant's "final reports" as well as "the underlying technical data and analyses upon which the reports [were] based." *Id.* At 635. Andritz asserted, however, that internal draft materials that the consultant had prepared for the attorneys were protected from discovery by the attorney-client privilege. The court agreed, noting that "[d]rafts of documents prepared by

8

counsel or circulated to counsel for comments on legal issues are considered privileged if they were prepared or circulated for the purpose of giving or obtaining legal advice and contain information or comments not included in the final version." *Id.* at 633. Invoking the law of various Circuits, the *Andritz* court found that "[p]reliminary drafts of contracts are generally protected by attorney/client privilege, since 'they may reflect not only client confidences, but also legal advice and opinions of attorneys, all of which is protected by the attorney/client privilege.'" *Id.* (quoting *Muller v. Walt Disney Productions*, 871 F. Supp. 678, 682 (S.D.N.Y. 1994)). The court ultimately found the consultant's internal draft documents to come within attorney-client privilege provided – as is the case here – that they were not circulated to other individuals beyond client and counsel. *Id.* at 635.

The same analysis was applied in *Ferko v. NASCAR*, 218 F.R.D. 125, 129 (E.D. Tex. 2003), where counsel to defendant International Speedway Corporation (ISC) retained an independent appraisal consulting firm, AAA, to assist him in rendering legal advice regarding implementation of two financial accounting standards. In a separate action, ISC, responding to a discovery request, inadvertently produced a draft report from the consultant and an e-mail between two ISC employees discussing and proposing changes in the draft report. ISC sought a protective order for return of these two documents, which the court granted. The *Ferko* Court observed that ISC's counsel "hired AAA to advise him on issues regarding" accounting standards, and that AAA in turn "helped translate complicated financial information" for counsel. *Id.* at 139. The accounting firm thus "enabled the giving of legal advice", and its internal communications hence came within attorney-client privilege. *Id.* at 135. Finding the two documents in question to be "protected by the federal attorney-client privilege," the court quashed the subpoena at issue and granted ISC a protective order. *Id.* at 141.

Other courts are in accord. *See, e.g., In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 474 (S.D.N.Y. 1996) ("The public release of the Lynch report does not waive the [attorney-client] privilege for the drafts if they were otherwise protected . . . Whatever [the drafts] may say, they are not crucial to a determination of the accuracy or reliability of the final report. That will turn in principal measure on a comparison between what the interviewees told Lynch and his colleagues, as reflected in the interview documents, and the description of the facts found in the final version of the report. There simply is no need for access to the drafts for that purpose."); *Guy v. United Healthcare Corp.*, 154 F.R.D. 172, 178 (S.D. Ohio 1993) ("Preliminary drafts of communications subsequently sent to third parties, to the extent they reflect legal advice, are covered by the attorney-client privilege."); *Schenet*, 678 F. Supp. at 1284 ("Preliminary drafts may reflect not only client confidences, but also the legal advice and opinions of attorneys, all of which is protected by the attorney-client privilege. The privilege is waived only as to those portions of the preliminary drafts ultimately revealed to third parties.").

As with the foregoing authorities, TIAX was retained by counsel (C&M) to assist C&M in the furnishing of legal advice (in this case, advice on regulatory and product safety issues) to C&M's client, DuPont. As with these authorities, the issues for which TIAX was retained were "complicated", *see Ferko*, 218 F.R.D. at 139, involving technical issues related to the functioning of surgical drapes and gowns in an operating room environment, issues which call for specialized expert assistance. As with these authorities, TIAX readily turned over its final work product and the data underlying that work product, and withheld on privilege grounds only the internal preliminary drafts. And, as with these authorities, TIAX has maintained confidence over these internal materials, not disseminating them outside the attorney-client orbit. No

different from these authorities, then, -- and no less than an attorney's internal discussions with his client -- TIAX's internal materials enjoy attorney-client privilege.

### C. Cardinal's Challenge To This Assertion of Attorney-Client Privilege Is Without Merit

Cardinal believes otherwise. Cardinal asserts that no materials of TIAX – *none* -- are entitled to attorney-client status. Cardinal's asserted basis for this challenge is waiver. Specifically, Cardinal asserts that "any privilege or protection has been waived as to the entire subject matter of TIAX's testing and its report, and all of the documents listed on the privilege log should be produced." Letter of Counsel to Cardinal dated March 24, 2004 (Tab C). Cardinal asserts that this sweeping waiver occurred when DuPont made public use of TIAX's Report. *Id.*

Broadly speaking, there are two forms of waiver: express and implied. Cardinal has never claimed that TIAX or DuPont *expressly* agreed to relinquish privilege as to TIAX's internal draft information. Hence, Cardinal must be asserting that an implied subject matter waiver has occurred.

Implied waivers of attorney-client privilege are rare. "[T]he case law reveals few genuine instances of implied waiver." *XYZ Corp. (In re Keeper of the Records)*, 348 F.3d at 23. The First Circuit has been vigilant in warning courts to exercise caution when reviewing a claim -- which is Cardinal's claim here -- of implied subject matter waiver. "[C]ourts should be cautious about finding implied waivers." *Id.*

Indeed, the First Circuit recently determined that "the extrajudicial disclosure of attorney-client communications, not thereafter used by the client to gain adversarial advantage in judicial proceedings, *cannot* work an implied waiver of all confidential communications on the same subject matter." *Id.* at 22 (emphasis supplied). The Court thus rejected the precise claim of broad subject matter waiver asserted here by Cardinal. Courts of the Sixth Circuit (the Circuit of

11

the parties' Tennessee federal court action) are in accord. *See, e.g., In re Grand Jury Proceedings, Oct. 12, 1995*, 78 F.3d 251, 255-56 (6th Cir. 1996) (applying narrow subject matter rule in determining that best approach was to follow the cases that made "prudential distinctions between what was revealed and what remains privileged"). The courts of both Circuits, in short, reject Cardinal's claim that courts apply a "broad" waiver analysis. *See* Cardinal Letter dated March 24, 2004.

As to the specific draft TIAX materials in question, Cardinal's waiver position is likewise belied by the authorities. As demonstrated above, attorney-client privilege as to non-public, preliminary portions of a consultant's work is not waived by the mere issuance of the consultant's final work product. *See, e.g., Andritz Sprout-Bauer, Inc.*, 174 F.R.D. at 635; *Ferko*, 218 F.R.D. at 139. As explained recently by one commentator:

> To conclude that the disclosure of an attorney's final written product, after a series of exchanges with the client, results in the loss of privilege claims for all prior exchanges would destroy the privilege protection in a large percentage of instances where legal assistance is rendered . . . . This would strike at the very heart of the privilege because it would make clients wary of being open and candid when responding to the attorney's drafts.

Paul R. Rice, *Attorney-Client Privilege: Continuing Confusion About Attorney Communications, Drafts, Pre-Existing Documents, and the Source of the Facts Communicated*, 48 Am. U.L. Rev. 967 (1999).

Cardinal is correct in asserting that TIAX has made a broad production of TIAX materials. TIAX has been nothing but cooperative and forthcoming in responding to Cardinal's discovery requests by subpoena. This cooperation does not effect a waiver, and should not now be used to punish TIAX or DuPont. *Cf. Andritz*, 174 F.R.D. at 635 (granting protective order and explaining that movant is "not taking the position that any and all materials reviewed by

counsel or prepared by its . . . consultants are protected. . . . [I]t has in fact produced most materials . . . , and has excluded from production only a limited number").

## CONCLUSION

TIAX respectfully requests that this Court grant its Motion for a Protective Order.

Respectfully submitted,

TIAX and DUPONT,
By their attorneys,

*Howard J. Castleman (RMM)*
*Ryan M. M*
Howard J. Castleman/BBO # 551259
Ryan M. MacDonald BBO #654688
Murtha Cullina LLP
99 High Street, 20th Floor
Boston, MA 02109
(617) 457-4000

Of Counsel:
Scott L. Winkelman
Andrea D. Rose
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116

April 7, 2004

2131802

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via United States mail, postage prepaid, on this 7th day of April, 2004, to:

James M. Doran, Jr.
Mark H. Wildasin
Waller, Lansden, Dortch & Davis
Nashville City Center
511 Union Street, Suite 2100
Nashville, Tennessee 37219

Mark L. Levine
Rebecca Weinstein Bacon
Adam Hoeflich
J. Scott McBride
Bartlit, Beck, Herman, Palenchar & Scott
Courthouse Place
54 W. Hubbard Street, Suite 300
Chicago, Illinois 60610

M. Clark Spoden
John R. Wingo
Frost, Brown & Todd, LLC
424 Church Street, Suite 1600
Nashville, Tennessee 37219

John M. Skenyon
Fish & Richardson, P.C.
225 Franklin Street
Boston, Massachusetts 02110-2894

Dan K. Webb
Jeffrey Wagner
Susan A. Pipal
Raymond C. Perkins
Erik William Snapp
Jennifer G. Gallinson
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, Illinois 60601-9703

Marc T. McNamee
A. Scott Ross
Neal & Harwell PLC
Suite 2000, One Nashville Place
150 4th Avenue North
Nashville, Tennessee 37219-2498

Ryan M. MacDonald

275092-1