**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| E.I. DU PONT DE NEMOURS AND COMPANY, </br></br>         Plaintiff, </br></br>         v. </br></br> CARDINAL HEALTH, INC., </br> CARDINAL HEALTH 200, INC., </br> BBA GROUP U.S. HOLDINGS, INC. and </br> BBA NONWOVENS SIMPSONVILLE, INC., </br></br>         Defendants. | ) </br> ) </br> ) </br> ) Civil Action No.  04 MBD 10106 </br> ) </br> ) (Related Case Pending in the Middle </br> ) District of Tennessee, Case No. 3-03- </br> ) 0848) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) |

**CARDINAL 200'S OPPOSITION TO TIAX's MOTION
FOR PROTECTIVE ORDER AND TO MODIFY SUBPOENA
AND REQUEST FOR ORAL ARGUMENT**

Defendant Cardinal Health 200, Inc. ("Cardinal 200"), by its attorneys, respectfully submits this Opposition to TIAX LLC ("TIAX") and E.I. DuPont de Nemours and Company's ("DuPont") Motion for Protective Order and to Modify Subpoena.

Plaintiff DuPont has brought suit against Defendant Cardinal 200 in the Middle District of Tennessee claiming, in relevant part, that Cardinal 200 has misrepresented the qualities and characteristics of its newest product, the Tiburon surgical drape.  DuPont has not limited its accusations to the judicial arena, however.  Instead, Dupont has gone on the offensive in the marketplace, where it has been telling customers that Cardinal 200's representations about the quality and safety of the Tiburon Drape are false.  One of the weapons that DuPont has wielded against Cardinal 200 in court and in the marketplace is a report based on its scientific testing of the Tiburon Drape that was performed by TIAX and which was commissioned by DuPont's law firm, Crowell & Moring LLP ("C&M").

Cardinal 200 served TIAX, a third party to this lawsuit, with a subpoena to produce documents relevant to this case. What is in dispute here is whether Cardinal 200 is entitled to discover drafts of the publicly-disclosed TIAX report, which TIAX and DuPont improperly contend are protected by the attorney-client privilege. Because DuPont and TIAX have failed to substantiate their assertions of privilege, the Court should deny TIAX and DuPont's motion for protective order and require TIAX to produce the withheld documents. Alternatively, even if a valid claim of privilege were found, DuPont has waived the privilege by publicly disseminating portions of TIAX's work product.

## **FACTS**

1. DuPont manufactures fabric and distributes it to various entities, which convert the fabric to hospital gowns and drapes.

2. Cardinal 200 converts fabrics into hospital gowns and drapes and was a customer of DuPont for almost fourteen years until recently.

3. In August 2003, the law firm of C&M retained TIAX, a scientific testing corporation, to test the characteristics of the Tiburon Drape in an apparent attempt to bolster DuPont's claims that Cardinal 200 is falsely representing the properties its products.[1]

4. On December 4, 2003, C&M sent the final TIAX Report to DuPont, without providing any accompanying legal advice in the transmission. (See TIX 0000294-311, TIX 0000416-417, attached as Ex. A)[2]

---

[1] C&M hired TIAX in approximately August 2003. DuPont filed the instant suit against Cardinal 200 in September 2003. Notwithstanding this timing, C&M repeatedly asserted during the parties' meet and confer sessions that TIAX was not hired in anticipation of litigation, and thus they are not claiming that TIAX's documents are protected as attorney work product.

[2] The referenced documents have been designated as Confidential pursuant to the Agreed Protective Order Governing Disclosure of Confidential Information in the case of *DuPont v. Cardinal Health, Inc. et. al* (M.D. Tenn. No. 3:03-0848). A Motion to Impound is being filed simultaneously with this Opposition. Pursuant to Local Rule 7.2, upon allowance of that motion, the confidential material will be filed under seal.

5.  DuPont then disseminated the TIAX results, including at least the Executive Summary, to its customers, to Cardinal 200's customers and to the U.S. Food and Drug Administration ("FDA").  In a letter to its customers, DuPont additionally offered to send a full copy of the report upon request.  (See attached as Ex. B).

6.  DuPont sent the entire report to Cardinal 200.  DuPont and another Cardinal 200 competitor have been using the test results in the marketplace in their attempts to discredit Cardinal 200's Tiburon Drape.

7.  In order to investigate further the methodology and results of the report being used against it, which Cardinal 200 anticipates will be used by DuPont in this lawsuit, Cardinal 200 issued the subpoena that is the subject of TIAX's motion.

8.  In response to the subpoena, TIAX produced approximately 400 pages of documents to Cardinal 200 on March 10, 2004.  On March 22, 2004, TIAX provided a privilege log to Cardinal 200 listing a series of documents, totaling over 250 pages, that it claims are draft documents and underlying data protected from discovery by the attorney-client privilege.

**Extended Efforts to Meet and Confer**

9.  On March 23, 2004, counsel for Cardinal 200 wrote a letter to counsel for TIAX inquiring into the basis for the assertion of an attorney-client relationship from which any attorney-client privilege could attach.  It was not at all clear whom C&M claimed to have as its client.  Further, Cardinal 200 asserted that the documents did not appear to be privileged and to the extent any privilege existed, it had been waived.  Cardinal 200 requested that TIAX reconsider its privilege designations. (Motion for Protective Order ("Prot. Ord. Mtn.") at Tab C). Counsel for TIAX then requested a meet and confer between the parties.

10. On March 29, 2004, attorneys for Cardinal 200 and TIAX held a telephonic meet and confer to discuss TIAX's privilege designations. During this discussion, C&M indicated that they hired TIAX to study safety issues and maintained that TIAX acted as a consultant to C&M. Cardinal 200 maintained that C&M was not providing legal advice in these documents and, further, there was no request for legal advice by TIAX. Counsel for Cardinal 200 continued to assert that DuPont's public use of the TIAX report and findings was inconsistent with the privilege and that the privilege was thus waived. During the meet and confer, C&M continued to assert that an attorney-client relationship existed between it and TIAX. C&M agreed to reconsider the privilege assertions after consulting with its client. Later that week, on April 2, 2004, C&M requested a second meet and confer.

11. During a meet and confer on April 5, 2004, C&M reported TIAX would continue its privilege assertions as to any internal or draft documents and would withhold the documents on the basis of the attorney-client privilege. C&M further asserted that TIAX served as a consulting expert to assist C&M. At this meeting C&M still did not assert that it was retained to represent DuPont and that TIAX was assisting C&M in that capacity. Cardinal 200 told C&M that Cardinal 200 will reconsider its challenges to TIAX's unfounded privilege assertions if DuPont stipulates that it will not use the TIAX report or any related data during this lawsuit. DuPont has not accepted this offer. Counsel for both Cardinal 200 and TIAX agreed to exchange case law. Additionally, C&M indicated that TIAX would submit its documents for *in camera* review by this court if the issue became the subject of motion practice. That same day, C&M provided the case law that it claimed supported its assertion of an attorney-client privilege protection for the drafts and data underlying the publicly disclosed TIAX report. (See attached at Ex. C )

12. On April 6, 2004 TIAX de-designated six pages of draft documents it previously withheld as privileged. (See attached as Ex. D).

13. On April 6, 2004, Cardinal 200 submitted its case law to TIAX. Because C&M's authorities and argument did not support its privilege position, Cardinal 200 insisted that it be entitled to review the drafts and data underlying the TIAX report, which DuPont has so publicly used to claim that Cardinal 200 has misrepresented its Tiburon surgical drape. This motion followed.

## ARGUMENT

### I. THE ATTORNEY CLIENT PRIVILEGE DOES NOT APPLY

TIAX has not shown the existence of an attorney-client relationship. TIAX's own statements as well as the documents produced prove that C&M plainly did not act in its professional capacity as a legal advisor when it retained TIAX. TIAX claims that it facilitated the rendering of legal advice by C&M to DuPont on regulatory and product safety issues. (Prot. Ord. Mtn. at 8). Yet such a conclusory statement does not suffice to provide good cause for entry of a protective order. Rather, it is obvious that C&M acted as a sounding board for TIAX's draft reports. As described more fully below, this in no way establishes an attorney-client privilege protection for these documents. This Court should reject DuPont and TIAX's legally insupportable attempt to shield these documents from production and should order TIAX to produce the withheld documents.

**Burdens of Proof With Respect to Protective Order and Attorney-Client Privilege**

The burden on a motion for a protective order falls on the movant. <u>Public Citizen v. Liggett Group, Inc.</u>, 858 F.2d 775, 789 (1st Cir. 1988). As parties seeking a protective order, TIAX and DuPont bear the burden of demonstrating the existence of "good cause" for the order.

5

Multi-Core Inc. v. Southern Water Treatment Company, 139 F.R.D. 262, 263 (D.Mass. 1991). "A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements." Anderson v. Cryovac, Inc., 805 F.2d 1, 7 (1st Cir. 1986). If a party fails to meet the burden of proving good cause, "the discovery materials in question should not receive judicial protection." Public Citizen, 858 F.2d at 789.

The burden of proving the existence of the attorney-client privilege is on the party asserting the privilege. United States v. Bay State Ambulance and Hospital Rental Service, Inc., 874 F.2d 20, 28 (1st Cir. 1989). The First Circuit has stated that the attorney-client privilege exists:

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose (4) made in confidence (5) by the client, (6) are at his insistence permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

United States v. MIT, 129 F.3d 681 (1st Cir. 1997). The scope of the privilege should be "strictly confined within the narrowest possible limits." United States v. Lawless, 709 F.2d 485, 487 (7th Cir. 1983) (citing 8 Wigmore, Evidence § 2291).

**A. TIAX FAILS TO MEET ITS BURDEN OF PROVING GOOD CAUSE AND THE EXISTENCE OF AN ATTORNEY-CLIENT RELATIONSHIP**

TIAX fails to meet its burden of proving either "good cause" or that an attorney-client relationship exists. Notably, TIAX fails to submit even a single affidavit to prove any of the facts necessary to establish an attorney-client privilege claim. Rather, TIAX simply attaches the subpoena, its privilege log and the correspondence between the parties. Conclusory statements from the TIAX brief are insufficient and courts have refused to grant a protective order when the parties have not filed affidavits or other evidence along with its motion. See

Nestle Foods Corp. v. Aetna Casualty and Surety Co., 129 F.R.D. 483, 485 (D.N.J. 1990) (refusing to grant protective order when "[d]efendants have submitted no affidavits, solely the conclusory arguments of counsel" and when defendants failed to make a particularized showing of harm); Brittain v. Stroh Brewery Company, 136 F.R.D. 408, 412 (M.D.N.C. 1991) ("The party must make a particularized request and a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements…. Such demonstrations are preferably made by affidavits from knowledgeable persons"); THK America, Inc. v. NSK Co. Ltd., 157 F.R.D. 637, 646 (N.D.Ill. 1993) ("A protective order should not be issued based only upon counsel's arguments in its briefs; the party seeking to protect itself… should support its allegations of serious injury with affidavits…").

TIAX provides absolutely no explanation of how C&M was providing legal advice in writing, revising or commenting upon the TIAX report. TIAX fails to explain how the privilege would attach to these draft reports when, by C&M's admission, it did not apply to the other 400 pages of material that C&M and TIAX have not claimed are privileged. Quite simply, TIAX has failed to show that good cause exists for this court's intervention.

The attorney-client privilege only exists when a client requests, or an attorney provides, confidential legal advice. It does not protect communications when the attorney serves merely as a conduit for information. See United States v. Pipkins, 528 F.2d 559, 563 (5th Cir. 1976) (explaining that the attorney-client privilege does not apply to information that the client intends his attorney to impart to others); United States v. Rockwell International Corp., 144 F.R.D. 396, 399 (D.Colo. 1992) ("In essence, counsel merely acted as a conduit in taking factual information supplied by the client and relaying that material to the government"); Burton v. R.J. Reynolds Tobacco Company, 170 F.R.D. 481 (D.Kansas 1997) ("The fact that the client chose to

channel the work through an attorney… does not provide the basis for a claim of privilege… "). "A party may not cloak a document with a privilege by simply having business, scientific or public relations matters handled by attorneys…." Burton, 170 F.R.D. at 488.

Unsure of the results that the testing would create, DuPont apparently asked C&M to hire TIAX to perform scientific testing on Cardinal 200's Tiburon Drape. C&M and TIAX simply shared a business-consultant relationship whereby C&M acted as a conduit or "go between" with respect to DuPont and TIAX. There is no evidence that C&M provided any "legal advice to DuPont concerning regulatory and product safety issues related to DuPont fabrics as found in the surgical operating environment." (Prot. Ord. Mtn. at 1.) Nor is there any evidence that C&M in any way provided legal advice vis a vis the Report. Rather, the record shows that C&M either acted merely as a filter or conduit for sending test results back to DuPont, or drafted and/or revised the TIAX report, the final version of which DuPont has publicly disclosed and used against Cardinal 200. (See Ex. A) Neither role would establish a protected communication. TIAX and DuPont have not met their burden of proving that the attorney-client privilege protects the withheld documents from production.

B. **TIAX IS NOT A CONSULTANT AND ITS COMMUNICATIONS WITH C&M ARE NOT PROTECTED**

TIAX has attempted to support its privilege assertions by pointing to several cases that hold that the attorney-client relationship protects exchanges between the client and an accountant when the accountant enables communication between the attorney and client by "translating" complex accounting concepts. See, e.g., United States v. Kovel, 296 F.2d 918, 922 (2d Cir. 1961). These cases do not apply. Kovel specifically applies only when the client supplies information to the third party consultant/accountant who then in turn acts as a "translator" to interpret the communication so that the attorney may provide legal advice. See

8

United States v. Ackert, 169 F.3d 136 (2nd Cir. 1999) (rejecting the application of Kovel where the role of the an investment banker hired by an attorney was not to translate or interpret information but rather was to provide additional information to the attorney). That is clearly not the case when the client, DuPont, had no interaction with TIAX, and rather C&M and TIAX worked together to furnish the client with a report to meet DuPont's business strategy. Kovel clearly states "if what is sought is not legal advice but only accounting service, or if the advice sought is the accountant's rather than the lawyers, no privilege exists." Id. at 922. In this instance what the client sought is not legal advice but technical and scientific testing services and the results contained in the TIAX report. This court should reject TIAX's attempt to further extend Kovel. See Cavallaro v. United States, 153 F.Supp.2d 52, 59 (D.Mass. 2001) (narrowly construing the privilege because any expansion "hinders the court in its search for the truth" and declining to apply Kovel).

   Not only does the fact scenario of the Kovel line of cases not apply, but the law is incongruent with TIAX's arguments. The concept of "derivative privilege" has been narrowly applied and courts have required the consultant's role to be one of ensuring the lawyer better understand the client. See Black & Decker Corporation v. United States, 219 F.R.D. 87, 91 (D. Md. 2003) (holding the attorney-client privilege did not apply when the accountant was hired to help evaluate the tax and business implications of a transaction because the advice was not provided primarily to assist plaintiff's attorneys in rendering legal advice). In particular, the First Circuit has held that merely alleging that an agent was "useful" in rendering legal advice was insufficient. Rather, "the available case law indicates that the 'necessity' element means more than just useful and convenient. The involvement of the third party must be nearly

9

indispensable or serve some specialized purpose in facilitating the attorney-client communications." Cavallaro v. United States, 284 F.3d 236, 249 (1st Cir. 2002).

Here, C&M was not relying on TIAX to help C&M better understand DuPont. TIAX's unverified, bare assertion that the drafts "facilitated" the rendering of legal advice is insufficient to establish the attorney-client relationship in this Circuit. Id.; see also United States v. Ackert, 169 F.3d 136 (2d Cir. 1999) ("[A] communication between an attorney and a third party does not become shielded by the privilege solely because the communication proves important to the attorney's ability to represent the client."). Moreover, the client in this case, DuPont, provided absolutely no confidential information to TIAX, and TIAX is merely withholding data it discussed with C&M in connection with issuing the final report. See Occidental Chemical Corporation v. Ohm Remediation Services, 175 F.R.D. 431, (W.D.N.Y. 1997) ("It is not disputed that the assistance rendered by [the consultant] was based on factual and scientific evidence obtained through studies and observation of the physical condition of the [] site, and not through client confidences"); USPS v. Phelps Dodge Refining Corp., 852 F.Supp. 156, 159 (E.D.N.Y. 1994) ("There are few, if any conceivable circumstances where a scientist or engineer employed to gather data should be considered an agent within the scope of the privilege"). There is no basis for TIAX to claim a relationship protected by Kovel. Its claims of privilege should be rejected.

   C. **INTERNAL DRAFT TIAX MATERIALS ENJOY NO PROTECTION IN LIGHT OF DUPONT'S PUBLIC USE OF THE TIAX REPORT**

DuPont's ultimate goal in commissioning the TIAX report was public dissemination in support of its negative assertions about Cardinal 200's Tiburon fabric. The cases cited by TIAX to support its theory that the draft documents remain privileged do not apply

because TIAX does not assert that its work enabled C&M to provide legal advice to DuPont. See, e.g., Ferko v. NASCAR, 218 F.R.D. 125, 129 (E.D. Tex. 2003) (finding the independent consulting firm "helped translate complicated financial information" and "enabled the giving of legal advice"). Furthermore, drafts of the TIAX report are not protected because the report was prepared for public dissemination.   See e.g. In re Martin Marietta Corporation, 856 F.2d 619, 623 (4th Cir. 1988) (holding that "if a client communicates information to his attorney with the understanding that the information will be revealed to others, that information as well as the details underlying the data which was to be published will not enjoy the privilege."); In re Grand Jury Proceedings, 33 F.3d 342, 355 (4th Cir. 1994) (materials connected with publicly disclosed documents are not privileged); Western Trails, Inc. v. Camp Coast to Coast, 139 F.R.D. 4, 11-12 (D.D.C. 1991) (applying subject matter waiver to all communications concerning a report disclosed to the adversary, including drafts of the report and documents which were derived from the report); P&B Marina Ltd. v. Logrande, 136 F.R.D. 50, 55 (E.D.N.Y. 1991) ("Drafts of letters or documents to third parties lack the requisite confidentiality to be protected under the attorney-client privilege."); United States v. Willis, 565 F.Supp. 1186, 1207 (S.D. Iowa 1983) (drafts of documents of a type to be disclosed to third parties fall outside the scope of the privilege where information contained is intended to thereby be transmitted to the third party); Dudley v. Ski World, Inc., No. IP87-1025C, 1989 WL 73208 at *2 (S.D. Ind. Feb. 20, 1989) (communications that refer to content of prospectuses which were disseminated to the public are not privileged) (attached at Ex. E); United States v. Lawless, 709 F.2d 485 (7th Cir. 1983) ("when information is transmitted to an attorney with the intent that the information will be transmitted to a third party… such information is not confidential"); Heidelberg Harris, Inc. v. Mitsubishi Heavy Industries, Ltd., No. 95C-0673, 1996 WL 732522 at *14 (N.D. Ill. Dec. 9, 1996) (where

11

documents are waived by disclosure to third parties, all underlying documents must therefore be produced) (attached at Ex. F); North Carolina Electric Membership Corp. v. Carolina Power & Light, 110 F.R.D. 511, 517 (M.D.N.C. 1986) ("Preliminary drafts of letters or documents which are to be published to third parties lack confidentiality"); In re Grand Jury Proceedings, 727 F.2d 1352 (4th Cir. 1984) (holding that even where there was no prospectus actually issued, the privilege "extends to the substance of a communication, since the disclosure of any significant part of a communication waives the privilege and requires the attorney to disclose the details underlying the data to be published").

        TIAX's attempts to produce hundreds of pages of internal documents and further disseminate the entire report and the underpinnings of the report while withholding a substantial number of documents that it characterizes as "drafts" is unsupported by the law.  As the Fourth Circuit summarized:

> Although the privilege has a venerable pedigree and helps to ensure competent and complete legal services, it is nonetheless inconsistent with the general duty to disclose and impedes the investigation of the truth.  For this reason… the privilege must be strictly construed. … [I]f a client communicates information to his attorney with the understanding that the information will be revealed to others, that information as well as the details underlying the data which was to be published will not enjoy the privilege.

United States v. (Under Seal), 748 F.2d 871, 875 (4th Cir. 1984) (holding that the details underlying the data includes all preliminary drafts of the documents).  TIAX has not met its burden of proof of showing good cause exists for protection of draft documents. Its motion should be denied.

II. **EVEN IF AN ATTORNEY CLIENT PRIVILEGE EXISTED IT HAS BEEN WAIVED**

To the extent that any attorney-client relationship existed, which it did not, DuPont's widespread distribution of the report to its customers and to Cardinal 200 customers waived the privilege. The First Circuit instructs that privileges be narrowly construed and requires that any privileged communications remain in confidence or the privilege is waived. Colonial Gas Co. v. Aetna Casualty & Surety Co., 139 F.R.D. 269 (D. Mass. 1991). "[W]here the client chooses to share communications outside this magic circle, the courts have usually refused to extend the privilege." MIT, 129 F.3d at 684. The burden of proof is upon the claimant of the privilege to show nondisclosure of privileged information. Id. at 686. The moment that DuPont decided to release the TIAX report and other relevant information outside the "magic circle" of its attorneys, TIAX, and itself, it waived any privilege that it claims to have had. TIAX fails to meet its burden of non-waiver. (See Ex. B)

The First Circuit has rejected the concept of the limited waiver of the attorney-client privilege, because "[a]nyone who chooses to disclose a privileged document to a third party… has an incentive to do so, whether for gain or to avoid disadvantage." Id. at 686. For example, in MIT, the defendant supplied attorney-client privileged information consisting of attorney billing statements to an IRS auditing agency. However, MIT continued to maintain that minutes of the auditing and executive committee should remain privileged. The First Circuit affirmed the district court's holding that MIT forfeited the privilege by disclosing the substance of its minutes in the legal bills. Id. at 684-85. Likewise, TIAX forfeited its privilege as to any underlying documents by disclosing the substance of those documents in its Report.

13

Further, contrary to TIAX's assertions, the Sixth Circuit, relying on MIT, also found that once a privilege is waived, that waiver is final and complete. See In re Columbia/HCA Healthcare Corporation Billing Practices Litigation, 293 F.3d 289 (6th Cir. 2002). Specifically, the court stated, "[b]y refusing the doctrine of selective waiver, the Court agrees with the First Circuit that the general principle that disclosure normally negates the privilege is worth maintaining…. [R]ejection of selective waiver provides further certainty that waiver of the privilege ensures that the information will be disclosed." Id. at 304.

Even further evidence of subject matter waiver can be found by examining the documents produced by TIAX and disclosed to Cardinal 200. Several documents appear to reflect communications with C&M attorneys regarding the testing procedures and draft documents. (See, e.g. TIX 0000278-286, 350-360, 408-409, attached as Ex. G)[3]. The over breadth of TIAX's privilege assertion is further demonstrated by the fact that on April 6, 2004, after Cardinal 200 questioned the TIAX privilege claims, TIAX withdrew its claim of privilege to six pages of documents that even TIAX acknowledged should not have been withheld as privileged. These included draft and preliminary documents. (See Ex. C). This should raise questions regarding the soundness of the remaining TIAX privilege claims, particularly in light of its complete failure to support those claims with affidavits or other evidence as required.

The law does not permit TIAX and DuPont to pick and choose the documents that favor their interests and make public use of those documents to Cardinal 200's detriment, then hide less favorable documents behind a claim of privilege. The law does not allow a party to use the privilege as both a sword and a shield. See Sax v. Sax, 136 F.R.D. 542, 543 (D.Mass. 1991).

---

[3] These documents have been designated as Confidential pursuant to the Agreed Protective Order Governing Disclosure of Confidential Information in the case of *DuPont v. Cardinal Health, Inc. et. al* (M.D. Tenn. No. 3:03-0848). They will be submitted to the Court upon allowance of Cardinal 200's Motion to Impound. *See* note 1, *supra*.

14

"A risk of unfairness is evident where information is provided by one side in a case and then an inquiry into its origin is shielded by a claim of privilege…. [T]he affirmative use of privileged information has been held to be a waiver of privilege." United States v. Billmeyer, 57 F.3d 31 (1st Cir. 1995). Fundamental fairness demands that Cardinal 200 have access to the draft documents that constitute the origin of the Report at issue. See In re Grand Jury Proceedings, 78 F.3d 251 (6th Cir. 1996) (the court must be guided by fairness concerns in determining the scope of waiver).

## CONCLUSION

WHEREFORE, Cardinal 200 requests the Court deny TIAX and DuPont's motion and enter an Order under Federal Rules of Civil Procedure 37 and 45 compelling TIAX to produce all relevant documents requested by Cardinal 200 under its subpoena.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Cardinal 200 respectfully requests oral argument on the Motion for Protective Order.

Dated:  April 21, 2004                              **DEFENDANT CARDINAL HEALTH 200, INC.,**

By its attorneys,

/s/ Scott A. Birnbaum_____
Scott A. Birnbaum (BBO #543834)
BIRNBAUM & ASSOCIATES, P.C.
268 Summer Street
Boston, MA 02210
(617) 542- 3100

**OF COUNSEL:**
Dan K. Webb
Jeffrey M. Wagner
Susan A. Pipal
WINSTON & STRAWN LLP
35 West Wacker Drive

Chicago, IL 60601
(312) 558-5600

Marc T. McNamee
A. Scott Ross
NEAL & HARWELL, PLC
2000 One Nashville Place
150 Fourth Avenue North
Nashville, TN 37219-2498
(615) 244-1713

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of Cardinal Health 200, Inc.'s Opposition to TIAX's Motion for Protective Order and to Modify Subpoena has been served, via the method(s) indicated below, on the following counsel of record this 21st day of April, 2004.

|  |  |
|---|---|
| ( ) Hand | James M. Doran, Jr. |
| (X) Mail | Mark H. Wildasin |
| ( ) Fax | Waller, Lansden, Dorch & Davis |
| ( ) Fed. Ex. | Nashville City Center |
| (X) E-Mail | 511 Union Street, Suite 2100 |
|  | Nashville, TN 37219 |
|  |  |
| ( ) Hand | Mark L. Levine |
| (X) Mail | Rebecca Weinstein Bacon |
| ( ) Fax | Bartlit, Beck, Herman, Palenchar & Scott |
| ( ) Fed. Ex. | 54 W. Hubbard Street |
| (X) E-Mail | Suite 300 |
|  | Chicago, IL 60610 |
|  |  |
| ( ) Hand | Ryan M. MacDonald |
| (X) Mail | Murtha Cullina LLP |
| ( ) Fax | 99 High Street |
| ( ) Fed. Ex. | Boston, MA 02110 |
| (X) E-Mail |  |
|  |  |
| ( ) Hand | Scott Winkleman |
| (X) Mail | Andrea Rose |
| ( ) Fax | Crowell & Moring LLP |
| ( ) Fed. Ex. | 1001 Pennsylvania Avenue, N.W. |
| (X) E-Mail | Washington, D.C. 20004 |
|  |  |
| ( ) Hand | M. Clark Spoden |
| (X) Mail | John R. Wingo |
| ( ) Fax | Frost, Brown & Todd, LLC |
| ( ) Fed. Ex. | 424 Church Street |
| (X) E-Mail | Suite 1600 |
|  | Nashville, TN 37219 |
|  |  |
| ( ) Hand | John M. Skenyon |
| (X) Mail | Fish & Richardson P.C. |
| ( ) Fax | 225 Franklin Street |

( ) Fed. Ex.        Boston, MA 02110-2804
(X) E-Mail

  /s/ Scott A. Birnbaum

**CHI:1353750.4**