THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| E.I. DU PONT DE NEMOURS AND COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> CARDINAL HEALTH, INC., <br> CARDINAL HEALTH 200, INC., <br> BBA GROUP U.S. HOLDINGS, INC. and <br> BBA NONWOVENS SIMPSONVILLE, INC., <br><br> Defendants. | Misc. Business <br> Docket No. 04-10106-WGY <br><br> (Related Case Pending in the <br> Middle District of Tennessee <br> Case No. 3-03-0848) |

**REPLY IN SUPPORT OF MOTION FOR PROTECTIVE
ORDER AND TO MODIFY SUBPOENA**

TIAX, LLC ("TIAX") and E.I. DuPont de Nemours and Company ("DuPont") seek a protective order upholding their claim of attorney-client privilege as to certain communications between TIAX and DuPont's attorneys, Crowell & Moring ("C&M"). As discussed in movants' opening memorandum, the privilege applies to the work of a consulting expert retained to help an attorney provide legal advice to the attorney's client. *See, e.g., Cavallaro v. United States,* 284 F.3d 236, 249 (1st Cir. 2002); Memorandum in Support of Motion for Protective Order and to Modify Subpoena ("Opening Brief"), Dkt. #2, at 6-7. That is the issue here. TIAX has turned over to Cardinal its final report, its summary of that report, and data underlying that report – totaling hundreds of pages – and has withheld from production only its internal work product reflecting back-and-forth with C&M integral to C&M's provision of legal advice to its client, DuPont.

From Cardinal's Opposition brief, we learn that the parties do not disagree about the governing legal standards. Cardinal acknowledges that the attorney-client privilege extends to a consultant whose work was "necessary, or at least highly useful" to assist the attorney in rendering legal advice – for instance, by "serv[ing] some specialized purpose in facilitating the attorney-client communications." *See* Cardinal 200's Opposition to TIAX's Motion ("Cardinal Opp."), Dkt. #4, at 9-10 (quoting *Cavallaro,* 284 F.3d at 249). Cardinal maintains, however, that (1) the privilege does not apply here because TIAX was not hired to assist C&M in providing legal advice to DuPont, and (2) even if the privilege would otherwise apply, it has been waived.

Both of these contentions are in error – as to the facts and as to the law.

**I.    THE ATTORNEY-CLIENT PRIVILEGE APPLIES TO TIAX'S CONSULTING WORK FOR C&M.**

DuPont, which manufactures materials that are used in surgical gowns, retained C&M in 2003 to advise DuPont regarding product safety and regulatory issues involving surgical gowns and drapes. Opening Brief at 2. To provide the requested legal advice, C&M needed to understand complicated technical issues related to the functioning of surgical drapes and gowns in an operating room environment. *Id.* at 10. C&M hired TIAX to provide the necessary technical expertise. *Id*. at 2-3, 10. TIAX's expertise was instrumental in C&M's provision of legal advice to its client. Under governing law, the documents at issue are subject to the attorney-client privilege.

**A.    DuPont Retained C&M to Provide Legal Advice on Matters That Required Technical or Scientific Knowledge.**

Attached as Exhibit A to this Reply is the affidavit of Philip Katz, a partner in C&M. As the affidavit recounts, DuPont retained C&M to provide legal advice regarding issues DuPont might face under the Federal Food, Drug, and Cosmetic Act ("FFDCA"), as well as related

issues of tort law. Affidavit of Philip Katz ("Katz Aff.") ¶ 7. C&M has long represented DuPont on a variety of matters. *Id*. ¶ 4. Mr. Katz's practice includes counseling clients as to compliance with the FFDCA and on advertising matters, and his partner, Scott Winkelman, advises clients on issues of tort and contract law. *Id*. ¶ 5.

In order to provide DuPont with the requested legal advice, C&M needed to understand a range of scientific and technical issues regarding the performance characteristics of surgical gown and drape materials under conditions that can occur in an operating room. *Id*. ¶ 9. Scientific and technical expertise was necessary to understand and evaluate information provided to C&M by DuPont, to develop and analyze additional information that would provide context, and to explain the data and other information to C&M. *Id*. ¶¶ 9, 12. All of this was essential to C&M's ability to provide legal advice to DuPont, on such as whether and how DuPont should report its concerns to the Food and Drug Administration ("FDA"), what tort liability risks were presented by the performance of these gown and drape materials, and product disparagement law related to public statements regarding safety issues. *Id*. ¶¶ 9-10.

### B. TIAX Provided Technical Expertise Integral To C&M's Rendering Of Legal Advice.

TIAX was hired to provide the scientific and technical expertise necessary for C&M to render the legal advice being sought by its client. Katz Aff. ¶ 11. This is evidenced most starkly in the retention agreement that embodies the TIAX-C&M relationship. It states, unequivocally, that C&M was engaging TIAX's services "***to assist [C&M] in providing legal advice to [DuPont] in connection with tort and regulatory issues regarding its surgical gown and drape fabrics***." Retention Letter between TIAX and C&M, September 26, 2003 (Exh. 1 to Katz Aff.). This letter, written several months before any hint of the pending discovery dispute, confirms TIAX's role as technical consultant to C&M in the rendering of legal advice to DuPont.

3

And this is precisely how the parties proceeded. C&M relied upon the expertise of TIAX professionals to analyze and explain to counsel the information provided by DuPont as well as the data TIAX generated surrounding testing of gown and drape materials. Katz Aff. ¶ 12. The technical and scientific expertise of TIAX was necessary to facilitate C&M's communications with DuPont, and to assist C&M in providing legal advice to DuPont. *Id.* But for that expertise, C&M would not have had, nor would it have been able to assimilate, the information that was an integral part of C&M's analysis of the legal issues and advice to DuPont. *Id.*

A review of TIAX's report on its resulting work amply proves this point. The TIAX report describes analysis of sophisticated scientific testing, using industry equipment and standards beyond the conventional understanding of lay people. *See* December 4, 2003 TIAX report, *Effects of Surgical Drape Materials on the Fluid Repellency of Surgical Gown Materials* (attached to Opening Brief as part of Exhibit A). It is precisely in such circumstances that attorneys retain experts to enable the giving of legal advice. "[B]ecause 'the complexities of modern existence prevent attorneys from effectively handling clients' affairs without the help of others,' the attorney-client 'privilege must include all the persons who act as the attorney's agents.' " *Cavallaro*, 284 F.3d 236 at 247 (quoting Judge Friendly in *United States v. Kovel*, 296 F.2d 918, 921 (2d Cir. 1961)). TIAX professionals used their knowledge in a range of areas, from the very specific, such as the permeability of medical fabrics and the surface tension of liquids, to the more general, such as statistical analysis and human factors analysis.

## II. TIAX AND DUPONT HAVE SUBSTANTIATED THEIR CLAIM OF PRIVILEGE.

In challenging the present claim of privilege, Cardinal first contends that TIAX and DuPont "have failed to substantiate their assertions of privilege." Cardinal Opp. at 2. Indeed, Cardinal goes so far as to assert – without evidence or explanation – that there is no attorney-

client relationship to begin with, because C&M was not operating as a law firm in its representation of DuPont. *See, e.g.*, Cardinal Opp. at 5 ("C&M plainly did not act in its professional capacity as a legal advisor when it retained TIAX."), at 8 ("C&M and TIAX simply shared a business-consultant relationship").

This is incorrect. Movants' Opening Brief offers a detailed fact section describing the relationship between DuPont, C&M and TIAX, explaining the legal purposes for which DuPont hired C&M (thereby creating an attorney-client relationship) and explaining that C&M relied on TIAX for technical expertise necessary to providing the requested legal advice (thus extending the privilege). *See* Opening Brief at 2-5. Moreover, before any discovery dispute arose, TIAX furnished Cardinal with a privilege log identifying all internal TIAX materials being withheld on grounds of attorney-client privilege, and explaining the basis for this claim of privilege. A privilege log, of course, is precisely how litigants typically articulate and justify their claims of privilege. *See, e.g.*, *Nexxus Prods. Co. v. CVS N.Y., Inc.,* 188 F.R.D. 7, 11 (D. Mass. 1999) (finding from a review of privilege logs that plaintiffs met their burden of establishing that each described document was protected from discovery). Cardinal never once takes issue with this log. Counsel for TIAX and DuPont also explained the claim of privilege in extensive "meet and confer" discussions with counsel for Cardinal, being quite specific about the nature of the relationship and work that gives rise to privilege here.

Also, movants' motion makes clear that TIAX and DuPont would be submitting additional factual information in support of their request for protection. *See* Motion for Protective Order and To Modify Subpoena, Dkt. #1, at 1. The attached affidavit of Philip Katz, the C&M-TIAX retention letter, and the TIAX report all provide that additional support – and

5

refute Cardinal's unfounded assertions as to the nature of the relationships between DuPont, C&M, and TIAX.

### III.    THE ATTORNEY-CLIENT PRIVILEGE HAS NOT BEEN WAIVED.

Cardinal's second assertion is that DuPont effected a waiver – a waiver so broad that it extends to all of TIAX's internal deliberations and exchanges with C&M – by making the TIAX report public. *See, e.g.,* Cardinal Opp. at 13 ("DuPont's widespread distribution of the report to its customers and to Cardinal 200 customers waived the privilege.")  As support for this sweeping assertion, Cardinal cites case law that discusses what happens "once a privilege is waived." Cardinal Opp. at 14.

Cardinal's waiver analysis is misguided in two fundamental respects.

#### A.    Cardinal's Waiver Discussion is Inapposite Because Only Non-Privileged Materials Have Been Made Public.

The authorities relied upon by Cardinal for its waiver discussion involve settings in which a party has produced, advertently or inadvertently, privileged material.  The question in those cases thus becomes what waiver is effectuated by release of privileged material. *See, e.g.*, *United States v. MIT*, 129 F.3d 681 (1st Cir. 1997) (conducting waiver analysis after privileged billing statements and minutes had been released); *In re Columbia/HCA Healthcare Corp. Billing Practices Lit.*, 293 F.3d 289 (6th Cir. 2002) (conducting waiver analysis after privileged coding audits and related documents had been released).[1]

Here, by contrast, the only materials made publicly available by TIAX and DuPont *are not privileged*.  As noted above, TIAX has turned over its report, its executive summary of that

---

[1] Cardinal's authorities focus on the doctrine of "selective waiver" – which, as discussed in section III(B) below, is not at issue here.

6

report, and data underlying the report.  DuPont, likewise, has made public the report and its executive summary.  None of these materials is privileged, and movants have never asserted otherwise.  Cardinal's authorities might advance the Court's analysis if, for instance, TIAX had made public certain privileged internal communications with C&M, then sought to withhold from discovery other such internal communications.  But no one argues that that is what has occurred.  Cardinal's extended discussion of waiver – all of which concerns what happens "once a privilege is waived" (Cardinal Opp. at 14) – is thus beside the point.

It is conceivable that Cardinal means instead to suggest that the issuance of a consultant's report *per se* waives privilege as to all related information, regardless of the content of that information.  Were that the case, of course, the extended legal analysis found in the cases relied on by TIAX and Dupont and by Cardinal would make no sense.  The authorities cited recognize that draft, internal work product of a consultant retained by a law firm for the giving of legal advice may be treated differently from that consultant's publicly available work product.  *See, e.g.,* Opening Brief at 8-11; *Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609, 635 (M.D. Pa. 1997) (granting motion for protective order and finding attorney-client privilege applied to drafts of reports circulated among consultants and counsel and other documents provided by consultant to counsel, even where final reports and underlying technical data and analyses had been produced); *Schenet v. Anderson*, 678 F. Supp. 1280, 1284 (E.D. Mich. 1988) ("The [attorney-client] privilege is waived only as to those portions of the preliminary drafts ultimately revealed to third parties.").

If issuance of a consultant's **non-privileged, non-confidential** report *ipso facto* effected a waiver as to **privileged** and **confidential** materials, courts would not need to analyze whether the internal materials reflected the give-and-take of legal counseling; whether the internal materials

7

differed from published materials; and whether the consultant's internal exchange with counsel meets the "necessary, or at least highly useful" test. *Cavallaro*, 284 F.3d at 249. Instead, a court would simply ask whether any of the expert consultant's work has ever been made public; if so, the court would automatically find waiver. This is not the law.

   **B. Cardinal Conflates Separate Waiver Doctrines – Neither of Which Applies Here.**

  Even were an analysis of waiver here in order, Cardinal's discussion confuses the separate concepts of *selective* and *partial* waiver. Cardinal Opp. at 13-14. "Selective waiver permits the client who has disclosed privileged communications to one party to continue asserting the privilege against other parties." *In re Columbia/HCA Healthcare Corp.*, 293 F.3d at 295 n.5 (quoting citation omitted). "Partial waiver," by contrast, "permits a client who has disclosed a portion of privileged communication to continue asserting the privilege as to the remaining portions of the same communications." *Id.*

  The authorities relied upon by Cardinal (at 13-14) involve selective waiver. *See, e.g., In re Lupron Mktg. & Sales Practices Litig.*, 2004 U.S. Dist. LEXIS 6564, *5 n.4 (D. Mass. April 16, 2004) (clarifying that *United States v. MIT* is a "selective waiver" case and not a "partial waiver" case); *In re Columbia/HCA Healthcare Corp. Billing Practices Lit.*, 293 F.3d at 295 n.5 (rejecting selective waiver doctrine and distinguishing it from partial waiver doctrine). This leads Cardinal to the mistaken belief that the doctrine of partial waiver has been abolished. The First and Sixth Circuits have both recognized and affirmatively applied the concept of partial waiver. *See, e.g., XYZ Corp. v. United States (In re Keeper of the Records)*, 348 F.3d 16, 24 (1st Cir. 2003) ("Accordingly, we hold, as a matter of first impression in this circuit, that the extrajudicial disclosure of attorney-client communications, not thereafter used by the client to gain adversarial advantage in judicial proceedings, cannot work an implied waiver of all

8

confidential communications on the same subject matter."); *In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d 251, 255-56 (6th Cir. 1996) (applying narrower subject matter rule and determining that best approach was to follow the cases that made "prudential distinctions between what was revealed and what remains privileged").

At any rate, **neither** selective nor partial waiver is at issue here. There is no issue of selective waiver, because Cardinal does not maintain that TIAX or DuPont wish to share with somebody, but not with others, TIAX's privileged internal materials. Similarly, Cardinal does not maintain that TIAX or DuPont have ever disclosed to anyone any of TIAX's internal, confidential pre-report materials. Hence, there is no issue of partial waiver either.

Notably, Cardinal chooses not to address the basic waiver premises outlined in movants' Opening Brief – namely, that "the case law reveals few genuine instances of implied waiver," and that "courts should be cautious about finding implied waivers." *See* Opening Brief at 11-12 (quoting *XYZ Corp. (In re Keeper of the Records)*, 348 F.3d at 23). Where, as here, there has been no disclosure of privileged materials – express or implied – there is no waiver analysis to be had.

**IV.   CARDINAL'S ALLEGATIONS ABOUT USE OF THE TIAX REPORT ARE INCORRECT AND IRRELEVANT.**

The balance of Cardinal's Opposition is given over to assertions about DuPont's supposed use of the TIAX report. Specifically, Cardinal asserts that DuPont has used the TIAX report "as a weapon" both "in court and in the marketplace." Cardinal Opp. at 1. As a result, says Cardinal, movants cannot now "shield" otherwise privileged information from disclosure. Cardinal Opp. at 13-15.

This is both erroneous and irrelevant.

9

*First*, DuPont in fact has ***not*** used the TIAX report as a "weapon" in court. DuPont has not used the TIAX report in any court proceeding or filing, or otherwise in litigation. In fact, the TIAX report was injected into this litigation *by Cardinal*, through the Subpoena directed to TIAX and its document requests to DuPont. Cardinal does not dispute this. Indeed, its Opposition eventually concedes that Cardinal merely "anticipates" that DuPont may some day make use of the report in the parties' pending lawsuit in Tennessee. Cardinal Opp. at 3. Cardinal's prediction is a far cry from a genuine "sword/shield" situation, and cannot suffice to eliminate privilege. *See, e.g., XYZ Corp. (In re Keeper of the Records)*, 348 F.3d at 25 (explaining that "a prospective waiver will very rarely be warranted in extrajudicial disclosure cases"; the very rare cases being "discrete and limited situations, almost invariably involving advice of counsel defenses").

*Second*, to the extent DuPont has indeed "used" the TIAX report in the marketplace, that use has nothing to do with the present discovery dispute. DuPont has made available the report and its executive summary, and TIAX has readily produced to Cardinal those documents as well as its underlying data. Far from nefarious, this is precisely how science should work. With this public record, anyone -- Cardinal, customers, others – can appreciate and assess what TIAX's analysis shows about the safety characteristics of Cardinal's Tiburon product. Armed with this publicly available information, anyone – again, including Cardinal – can attempt to repudiate, or replicate, TIAX's science. Science, in short, should be met with science.

By contrast, DuPont and TIAX have never made public use of the privileged materials at issue before this Court. There has been no "injection" of these materials in any forum, in any way, for any purpose. Nor is injection of these internal materials necessary or useful to any valid purpose. Cardinal's opposition does not suggest otherwise.

*Third*, Cardinal cannot reconcile its claim that disclosure of the final report works "to Cardinal 200's detriment" (Cardinal Opp. at 14) or somehow impairs "fundamental fairness" (*id.* at 15) with what Cardinal acknowledges to be its desired use of the documents at issue. Cardinal has repeatedly asserted that it wants privileged TIAX information **not** to defend the underlying action – where its alleged relevance is merely anticipatory (*id.* at 3) – but to respond *in the marketplace* to DuPont's provision of the final report to others. *See* Cardinal Opp. at 1 ("DuPont has gone on the offensive in the marketplace"); *id.* at 14 (same).

When ruling on a motion for a protective order, the court may consider a party's true purpose in seeking the discovery of documents. *Blount Int'l, Ltd. v. Schuylkill Energy Res. Inc.*, 124 F.R.D. 523, 527 (D. Mass. 1989) ("[a]s the Supreme Court noted in *Oppenheimer*: 'In deciding whether a request comes within the discovery rules, a court is not required to blind itself to the purpose for which a party seeks information. Thus, when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery is properly denied.'") (quoting *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 352-3 (1978)). Thus, in determining whether Cardinal is entitled to the privileged information it seeks here, this Court may properly consider Cardinal's only presently existing (and not merely anticipatory) asserted reason for needing it: furthering its competitive advantage. Cardinal is already able to respond publicly to the already publicly available report. Its desire to respond further in the marketplace by appropriating internal, privileged TIAX information falls outside any legitimate discovery pursuit related to the underlying case or otherwise.

11

## CONCLUSION

TIAX and DuPont respectfully request that this Court grant their Motion for a Protective Order and to Modify Subpoena.

                Respectfully submitted,

                TIAX and DUPONT, by their Attorneys,

                _/s/ Ryan M. MacDonald_____
                Howard J. Castleman BBO # 551259
                Ryan M. MacDonald BBO #654688
                Murtha Cullina LLP
                99 High Street, 20th Floor
                Boston, MA  02109
                (617) 457-4000

Of Counsel:
Scott L. Winkelman
Andrea D. Rose
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.   20004
Telephone:  (202) 624-2500
Facsimile:  (202) 628-5116

May 3, 2004