UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| E.I. DU PONT DE NEMOURS AND COMPANY, ) | |
| ) | |
| Plaintiff, ) | Civil Action No.  04 MBD 10106 |
| ) | |
| v. ) | (Related Case Pending in the Middle |
| ) | District of Tennessee, Case No. 3-03- |
| CARDINAL HEALTH, INC., ) | 0848) |
| CARDINAL HEALTH 200, INC., ) | |
| BBA GROUP U.S. HOLDINGS, INC. and ) | |
| BBA NONWOVENS SIMPSONVILLE, ) | |
| INC., ) | |
| ) | |
| Defendants. ) | |

## CARDINAL 200'S SURREPLY IN OPPOSITION TO TIAX'S MOTION FOR PROTECTIVE ORDER AND TO MODIFY SUBPOENA[1]

Defendant Cardinal Health 200, Inc. ("Cardinal 200"), by its attorneys, respectfully submits this Surreply in Opposition to TIAX LLC ("TIAX") and E.I. DuPont de Nemours and Company's ("DuPont") Motion for Protective Order and to Modify Subpoena.

This discovery dispute is simple. DuPont hired Crowell & Moring ("C&M") to commission TIAX to perform a series of scientific tests on Cardinal 200's Tiburon drape and prepare a report (the "Report"). TIAX, with the help of C&M, drafted the final Report, and submitted it to C&M. C&M then passed the Report on to DuPont. DuPont disseminated the executive summary of the Report to its customers and Cardinal 200's customers throughout the country and offered the full Report to anyone who requested it. Cardinal 200 then served a subpoena upon TIAX, which responded with several hundreds of pages of documents, including at least 20 pages of correspondence between C&M and TIAX and draft materials labeled with an

---

[1] DuPont and TIAX filed a motion for leave to file a reply brief. Cardinal 200 responded by stating that it did not oppose the filing of a reply as long as it was given an opportunity to respond with a surreply. As of the date of filing, the Court has not yet ruled on the motion or leave to reply.

attorney-client privilege header. TIAX refuses to produce the remainder of the underlying and draft documents, claiming those documents are privileged. TIAX has not met its burden of proving that the attorney-client privilege applies. Further, even if a privilege exists, it has been waived. This Court, looking at the documents *in camera*, should find that TIAX and DuPont's privilege assertions are baseless and their motion for protective order should be denied.

I.  **THE ATTORNEY-CLIENT PRIVILEGE DOES NOT APPLY WHERE C&M ACTED AS A CONDUIT FOR FILTERING FAVORABLE TEST RESULTS TO DUPONT**

TIAX's supposed "new" information presented to this court in their reply brief is irrelevant[2]. TIAX states that C&M was hired "to provide legal advice regarding issues DuPont must face under the Federal Food, Drug, and Cosmetic Act ("FFDCA"), as well as related issues of tort law." See TIAX Reply in Support of Motion for Protective Order and to Modify Subpoena ("TIAX Reply") at 2-3; Affidavit of Philip Katz ("Katz Aff.") ¶7. It further states that C&M needed to understand "a range of scientific and technical issues" to advise DuPont. Id. at 3; Katz Aff. ¶9. Then TIAX claims that since it provided a privilege log, it sufficiently explained its bases of privilege. Id. at 5. Thus, it argues, the affidavit regarding the retention of C&M is all the support it needs to meet its burden of establishing the privilege. Id. at 6.

What matters in this case is not that C&M was retained, but how the attorneys acted with respect to the Report and the underlying documents at issue. C&M commissioned the TIAX Report to provide to DuPont to bolster DuPont's statements in the marketplace regarding Cardinal 200's Tiburon drape. C&M admits that it went back and forth with TIAX to create a

---

[2] TIAX explains its failure to attach an affidavit to its opening brief by stating that it reserved the right to supplement the brief with additional factual information. See TIAX reply at 5. It should be noted that the accompanying materials that the movants stated they would provide in their opening brief seem to refer to the controversy regarding confidentiality designations that the parties were negotiating at that time. See TIAX Motion for Protective Order at 1. Additionally, the affidavit attached to their reply brief does not involve any new information that could not have been initially disclosed and instead deals with the scope of the retention of C&M in September 2003.

2

final Report. Katz Aff. ¶ 15. C&M further admits that it provided the Report and executive summary to DuPont. Id. ¶ 13. In fact, the documents show that C&M plainly sent the documents with a note stating, "TIAX's Report of testing is attached." See Ex. A to Cardinal 200's Opposition to TIAX's Motion for Protective Order and To Modify Subpoena ("Cardinal 200 Opp.").

Simply alleging that C&M was retained for regulatory purposes does not meet the strict standard for privilege. See Mass. Eye and Ear Infirmary v. QLT Phototherapeutics, Inc., No. 00-CV-0783 (JLT), 2001 WL 1180694 (D. Mass. Sept. 25, 2001) (discussing the strict construction of the attorney-client privilege against the party asserting the privilege). TIAX's argument would allow this court to find that any communication is privileged once an attorney is retained. That of course is not the case. See United States ex. rel. Stone v. Rockwell International Corp, 144 F.R.D. 396, 400 (D. Colo. 1992) ("The fact alone that a party has communicated information to its attorney does not prevent discovery of the factual information"). A party must establish that the legal advice was sought from a professional in his capacity as such and that the communications relate to that purpose. United States v. MIT, 129 F.3d 681, 684 (1st. Cir. 1997) (emphasis added). Nowhere in its opening brief or its reply brief does TIAX show a nexus between the TIAX Report and C&M providing legal advice to DuPont, or show how the Report was prepared in connection with advising DuPont on legal matters.

Not only did C&M write and revise the report, which is not offering legal advice, but C&M also acted merely as a conduit between TIAX and DuPont for providing test results on its competitor's product. This conduct cannot be the basis of an attorney-client privilege. DuPont may not channel the work of its scientists through their regulatory attorneys and claim a basis for the privilege. "A party may not cloak a document with a privilege by simply having

3

business, scientific or public relations matters handled by attorneys…." Burton v. R.J. Reynolds Tobacco Company, 170 F.R.D. 481, 488 (D. Kansas 1997).  Clearly the burden of proof in this matter falls on TIAX.  Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 789 (1st Cir. 1988).  It has not met this strict burden and TIAX thus fails to prove the existence of "good cause" for the entry of a protective order.

## II. THE PRIVILEGE EXTENDING TO CONSULTING EXPERTS IS INAPPLICABLE BECAUSE TIAX CANNOT BE CONSIDERED A CONSULTANT TO C&M

TIAX's reply brief overstates the law and overcomplicates the facts.  Cardinal 200 agrees that the attorney client privilege applies to the work of a consulting expert in certain situations.  It does not apply here.

As stated in Cardinal 200's opposition, United States v. Kovel, 296 F.2d 918, 922 (2d Cir. 1961), is limited to the situation where the consultant plays an indispensable role in interpreting and translating information to facilitate the giving of legal advice.  See Cardinal 200 Opp. at 8-9.  What happened here is different.  C&M relied on TIAX simply to collect and process data pertaining to the Tiburon Drape.  A recent Second Circuit case illustrates this point.  In United States v. Ackert, 169 F.3d 136 (2d Cir. 1999), the court distinguished Kovel and limited the reach of its holding.  In Ackert, the attorney approached a financial advisor to discuss business transaction proposals and tax issues.  The Second Circuit acknowledged that the attorney interviewed the advisor in order to gain information to advise his client.  Id. at 139.  However, the court held that Kovel did not apply because the attorney was not relying on the advisor to interpret information given to the attorney by his client.  Rather, the attorney sought out information about the proposed transaction that the client did not have.  Id. The Court ultimately found that, while the advisor may have provided information that was helpful to the

lawyer, the information did not help the lawyer better understand the client. Id. at 139-140. As a result, the attorney's communication with the financial advisor was not privileged.

Similarly, it is clear in this case that C&M was simply assisting TIAX in procuring helpful information to provide to the client, DuPont. TIAX tested a product and produced a Report based on its findings. TIAX cannot show how the Report allowed C&M to better understand the client (DuPont). If the purpose of preparing the Report were truly to further assist C&M in providing advice to DuPont, there would have been no reason for the Report to be mass distributed by DuPont. Where there is no connection between the Report and any advice that C&M provided, Kovel does not apply. USPS v. Phelps Dodge Refining Corp., 852 F.Supp. 156, 159 (E.D.N.Y. 1994) ("There are few, if any, conceivable circumstances where a scientists employed to gather data should be considered an agent within the scope of the privilege.").

Cardinal 200's Opposition brief did not argue that the issuance of a consultant's report *per se* waives the privilege as to all other related information. See Cardinal 200 Opp. at 10-11. Rather, the cases that Cardinal 200 previously cited hold that, under the majority rule, drafts of a report created for public release do not enjoy confidential status. See Cardinal 200 Opp. at 11. The draft materials at issue in this case are not protected because they were prepared with the knowledge that the Report would be disclosed to the public. "If a client communicates information to his attorney with the understanding that the information will be revealed to others, that information as well as the details underlying the data which was to be published will not enjoy the privilege." United States v. (Under Seal), 748 F.2d 871, 875 (4th Cir. 1984). The First Circuit has not ruled on this issue. See TIAX Reply at 7 (citing cases outside this circuit). This court should adopt the majority rule. See Cardinal 200 Opp. at 11 (collecting cases).

III.    **ANY PRIVILEGE THAT EXISTED HAS BEEN WAIVED**

Even if the attorney-client privilege did apply to the draft documents, which it does not, TIAX has waived any privilege by disclosing the substance of the advice through the disclosure of the Report and its underlying data.  This is not a case of partial waiver as in In re XYZ Corporation, 338 F.3d 16 (1st Cir. 2002).  In that case, the court found the attorney-client privilege did not apply to a conference call where third parties were present, but also found that the telephone call in itself did not effect an implied waiver of all other documents at issue in the case.  Id. at 24.  Here there is no issue of an implied waiver.  Rather, dissemination of the Report worked an express waiver of its entire subject matter, as did the disclosure to Cardinal 200 of the underlying substance of the Report.

TIAX further improperly argues that the only materials that have been made available by TIAX and DuPont are documents that are not privileged.  See TIAX Reply at 6.  Thus, they argue there can be no waiver pursuant to XYZ.  This is false.  TIAX concedes, "Cardinal's authorities might advance the Court's analysis if, for instance, TIAX had made public certain privileged internal communications with C&M, then sought to withhold from discovery other such internal communications."  TIAX Reply at 7.  But, TIAX did just that in their production to Cardinal 200.  TIAX turned over several pages of documents that were specifically marked "privileged and confidential," "attorney-client privilege" and "attorney work product."  See Cardinal 200 Opp. at Ex. G.  Moreover, the documents produced to Cardinal 200 contain drafts, notes of meetings, and correspondence between C&M and TIAX-- the very same sort of documents that they are now withholding.  This is exactly the situation in which the courts have held that the release of privileged materials waives the privilege of all related documents in the case.  See MIT, 129 F.2d at 684-85.

6

TIAX's discussion of the difference between selective waiver and partial waiver does not advance the ball. It simply confuses what in reality is a simple set of facts. What happened in this case is that DuPont disseminated the TIAX Report to the general public. DuPont at that time waived any privilege. What DuPont and its lawyer and consultant now seek is to keep hidden whatever facts did not make the cut into the final Report. The court should note that TIAX and DuPont have carefully crafted their argument so as not to preclude the use of the Report in a court of law. See TIAX Reply at 10-11. It is only fair, since they seem to be reserving the right to use the Report and any related materials in the future court proceedings, Cardinal 200 should be given the right to discover such highly relevant information.

TIAX and DuPont have not satisfied their burden to establish that the privilege applies to the communications at issue and that it has not been waived. Accordingly, the motion for a protective order should be denied.[3]

## CONCLUSION

WHEREFORE, Cardinal 200 requests the Court examine the documents at issue *in camera*, deny TIAX and DuPont's motion and enter an Order under Federal Rules of Civil Procedure 37 and 45 compelling TIAX to produce all relevant documents requested by Cardinal 200 under its subpoena.

---

[3] Should the Court have any question about the asserted privilege, the Court could examine the documents *in camera.*

| | |
|---|---|
| Dated: May 10, 2004 | **DEFENDANT CARDINAL HEALTH 200, INC.,** |
| | By its attorneys, |
| | /s/Scott A. Birnbaum_____ |
| | Scott A. Birnbaum (BBO #543834) |
| | BIRNBAUM & ASSOCIATES, P.C. |
| | 268 Summer Street |
| | Boston, MA 02210 |
| | (617) 542- 3100 |

**OF COUNSEL:**
Dan K. Webb
Jeffrey M. Wagner
Susan A. Pipal
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600

Marc T. McNamee
A. Scott Ross
NEAL & HARWELL, PLC
2000 One Nashville Place
150 Fourth Avenue North
Nashville, TN 37219-2498
(615) 244-1713

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served, via the method(s) indicated below, on the following counsel of record this 10th day of May, 2004.

|  |  |
|---|---|
| (  ) Hand | James M. Doran, Jr. |
| (X) Mail | Mark H. Wildasin |
| (  ) Fax | Waller, Lansden, Dorch & Davis |
| (  ) Fed. Ex. | Nashville City Center |
| (X) E-Mail | 511 Union Street, Suite 2100 |
| | Nashville, TN 37219 |

|  |  |  |
|---|---|---|
| ( ) | Hand | Mark L. Levine |
| (X) | Mail | Rebecca Weinstein Bacon |
| ( ) | Fax | Bartlit, Beck, Herman, Palenchar & Scott |
| ( ) | Fed. Ex. | 54 W. Hubbard Street |
| (X) | E-Mail | Suite 300 |
|  |  | Chicago, IL 60610 |
| ( ) | Hand | Ryan M. MacDonald |
| (X) | Mail | Murtha Cullina LLP |
| ( ) | Fax | 99 High Street |
| ( ) | Fed. Ex. | Boston, MA 02110 |
| (X) | E-Mail |  |
| ( ) | Hand | Scott Winkleman |
| (X) | Mail | Andrea Rose |
| ( ) | Fax | Crowell & Moring LLP |
| ( ) | Fed. Ex. | 1001 Pennsylvania Avenue, N.W. |
| (X) | E-Mail | Washington, D.C. 20004 |
| ( ) | Hand | M. Clark Spoden |
| (X) | Mail | John R. Wingo |
| ( ) | Fax | Frost, Brown & Todd, LLC |
| ( ) | Fed. Ex. | 424 Church Street |
| (X) | E-Mail | Suite 1600 |
|  |  | Nashville, TN 37219 |
| ( ) | Hand | John M. Skenyon |
| (X) | Mail | Fish & Richardson P.C. |
| ( ) | Fax | 225 Franklin Street |
| ( ) | Fed. Ex. | Boston, MA 02110-2804 |
| (X) | E-Mail |  |

/s/ Scott A. Birnbaum

9

**CHI:1366004.2**